# UNITED STATES OF AMERICA
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| RANDY HUMPHREY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 4:05CV1768-SNL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody" is before the Court. The Government has responded.

### Standard of Review

To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The defendant must also establish prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. See also U.S. v. Coleman, 2005 WL 3021104 (E.D. Mo. 2005).

The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The performance prong of the Strickland test remains the same. Id. at 58-59. To establish prejudice in the context of the plea process the defendant must show "there is a reasonable probability that, but for counsel's errors [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id. at

59.

The standard has been defined by the United States Court of Appeals for the Eighth Circuit as follows:

> "An ineffective assistance claim generally requires two showing. 'First, the defendant must show that counsel's performance was deficient.' Strickland, 466 U.S. at 687, 104 S.Ct. 2052. This entails 'showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id. Second, the defendant must show prejudice. Id. To show prejudice, he or she must prove that 'counsel's errors were so serious as to deprive [him or her] of a fair trial, a trial whose result is reliable.' Id. *accord* Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (admonishing that the prejudice prong encompasses more than mere outcome determination, rather, the focus of the question of prejudice is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.)"

Covey v. United States, 377 F.3d 903, 906 (8th Cir. 2004). A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). ordinarily, if the defendant cannot prove prejudice, it is not necessary to address whether counsel's performance was deficient. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996); DeRoo at 925.

Failure to raise an issue on direct appeal ordinarily constitutes a procedural default and precludes a defendant's ability to raise that issue for the first time in a § 2255 motion. DeJan v. United States, 208 F.3d 682, 685 (8th Cir. 2000); Matthews v. United States, 114 F.3d 112, 113 (8th Cir. 1997), cert. denied, 522 U.S. 1064, 118 S.Ct. 730, 139 L.Ed.2d 668 (1998). United States v. Villalobos, 2004 WL2202666 (N.D. Ia.), United States v. Trotter, 2002 WL 827416 (D. Neb.), United States v. Knakmuhs, 2000 WL 34031866 (N.D. Ia.), See also Coleman v. U.S., supra.

This rule applies whether the conviction was obtained through trial or through the entry of a guilty plea. United States v. Cain, 134 F.3d 1345, 1352 (8th Cir. 1998), Matthews, 114 F.3d at 113). A defendant may surmount this procedural default only if the defendant "can show both (1) cause that excuses the default and (2) actual prejudice from the errors asserted." Matthews, 114 F.3d at 113.

## Background

Petitioner was charged with multiple violations in an eight-count indictment.

Motions to suppress evidence and statements were filed by counsel for petitioner and following a hearing before the Magistrate Judge, the motions were denied. Pursuant to a plea agreement following hearing on the motions, petitioner entered a plea of guilty on September 17, 2004 to Counts 1, 4, 5 and 6. Counts 1 and 4 involved possession with intent to distribute crack cocaine, Count 5 was a charge of possession with intent to distribute heroin and Count 6 was a charge of possession of a firearm in furtherance of one or more drug trafficking crimes. As part of the agreement, the remaining counts in the indictment were to be dismissed at sentencing and they were.

The Government also agreed to waive the filing of an information pursuant to 21 U.S.C. § 851 concerning petitioner's prior convictions for controlled substance offenses in State of Missouri courts. It was further a part of the agreement that petitioner waived his right to a direct appeal, and no appeal was filed.

On December 10, 2004 this Court sentenced petitioner to concurrent terms of 121 months as to Counts 1, 4 and 5 and 60 months as to Count 6 to be served consecutively to the prior counts.

As a result of the plea agreement, petitioner received reductions for acceptance of responsibility resulting in a total offense level of 30 and a criminal history category of III. His advisory guideline imprisonment range was 121-151 months and petitioner received a sentence at the low end of the guideline range. Had he not received the downward adjustment for acceptance of responsibility, his total offense level would have been 32 and his range of punishment for imprisonment would have been 151-188 months. In addition, as petitioner had been charged with two violations of 18 U.S.C. § 924(c) that were committed at different times, had he been found guilty of each he would have been sentenced to a term of imprisonment for five years on the first violation and a consecutive term of 25 years for the second violation.

At the time of the plea, there was some concern as to whether petitioner wished to implement the agreement. The Court granted counsel additional time to talk with petitioner and discussed with counsel the superceding indictment to be involved in the plea. The Court told counsel that if petitioner wished to go ahead with the plea, it would be satisfactory, but if not, then the case could be tried when set "subject to your right to file whatever motions you wish as to the superceding indictment." Plea Transcript, page 3 (PT-3).

During the plea on September 17, 2004, the Court made this statement to petitioner,

"First, it was obvious a moment ago that you had some concerns about whether you ought to consider signing this agreement and then going ahead with a plea and I want to tell you, this case is set October the 18th and we can try the case then and if you prefer that we go ahead and have a jury trial, we can do that. You don't have to enter a plea of guilty under this agreement, so do you want me to go ahead with this agreement and discuss it with you, or do you want to consider going to trial on this matter?

Mr. Humphrey: I'll take the agreement."

P.T. - 3.

At the time of the plea, the Court also discussed that portion of the agreement in which the Government will not request an enhanced sentence and will dismiss the counts for which there was not be a plea of guilty, and in addition the Court discussed with petitioner the status of the sentencing guidelines and the court decisions involving those guidelines. PT, 3-7. Petitioner indicated he had no questions about that dialogue, and indicated that he had discussed "something similar to that" with his attorney. PT -7.

After discussion of the calculation of the total offense level and the criminal history category and the guideline sentencing chart, the Court had this dialogue with petitioner:

> "Now again, this is somewhat complicated. If you follow that chart, I think you could see how it reads. Do you have any questions at all about that, sir? If you do, you can take time, you can either ask me or you can ask your lawyer.
>
> (An off the record discussion was held between client and counsel.)
>
> The Court:    If you want to take a minute and talk with your lawyer, why, please do so.
>
> (Off the record between client and counsel.)
>
> The Court:    Have you had a chance to discuss it further with your lawyer?
>
> Mr. Humphrey:    Yes, sir.
>
> The Court:    Do you have any questions about it?
>
> Mr. Humphrey:    No, sir.
>
> The Court:    Do you understand that, under your agreement, what you're faced with?
>
> Mr. Humphrey:    Yes, sir.
>
> The Court:    So I don't want to go ahead with it any further unless you know exactly what I'm telling you what you're faced with unless you are willing to do this.

Mr. Humphrey: Yes, sir.

The Court: Do you wish to go ahead with it, sir?

Mr. Humphrey: Yes, sir.

PT - 12.

After further review of the plea agreement with petitioner, this dialogue occurred:

The Court: Mr. Humphrey, do you have any question at all as to what your agreement is with the government?

Mr. Humphrey: No, sir.

The Court: How old are you, sir?

Mr. Humphrey: 40.

The Court: 40?

Mr. Humphrey: Yes, sir.

The Court: How much education have you had?

Mr. Humphrey: None.

The Court: Can you read and write?

Mr. Humphrey: No.

The Court: Have you gone over this agreement with your lawyer?

Mr. Humphrey: Yeah.

The Court: Has he read it to you?

Mr. Humphrey: Yes.

PT - 14 -15.

The Court also inquired if petitioner went over the agreement with his lawyer before he

signed it, and he said that he did, and there was nothing in the document he did not understand. PT - 24.

At that point, the Court read from the plea agreement the Statement of Facts that were set out. These facts involved the seizing by arresting officers from the petitioner's person on March 30, 2001 a Smith & Wesson 38 caliber revolver and five individually wrapped pieces of crack cocaine, constituting 4.76 grams. A further search of the residence at 1435 Goodfellow Blvd., from which petitioner had been operating produced 3.56 grams of crack cocaine which petitioner admitted was his. The facts revealed a further search on August 21, 2003 of property at 1473 Laurel and petitioner's vehicle. 27.48 grams of cocaine and 25.51 grams of heroin were seized from petitioner's vehicle and 27.08 grams of cocaine and 38.97 grams of heroin were seized from a bedroom at 1473 Laurel. PT - 27-28. Petitioner admitted these facts, and admitted that he possessed the substances involved with the intent to distribute them to another person or persons. PT - 26. Petitioner took issue with some of these facts, and the Court heard a statement from the U.S. Attorney that evidence could be introduced to support the fact statement. PT - 29.

At the conclusion of the plea, this dialogue occurred:

The Court: Now Mr. Humphrey, is there anything you and I have talked about here you do not understand?

Mr. Humphrey: I understand.

The Court: In view of everything that we have said, do you still tell me you're guilty of the charges I read to you in Count 1, Count 4, Count 5 and Count 6?

Mr. Humphrey: Yes, sir.

PT - 32.

**Discussion**

Petitioner asserts numerous grounds to support his motion. Some of these are co-mingled and repeated. Nevertheless, the Court will address the grounds as set out in the motion.

1. Prosecutorial Misconduct:

a. Petitioner asserts that the Assistant United States Attorney fabricated documents and records. Petitioner's own exhibits attached to his motion refute his position. Exhibit 8 is the City of St. Louis Metropolitan Police Incident Report. Property seized were individually- wrapped, off-white chunks, believed to be crack cocaine, taken to laboratory, clear plastic bag off-white chunks and one large off-white chunk believed to be crack cocaine taken to laboratory. This material was either taken from the person of petitioner or the residents at 1435 Goodfellow Blvd. The .38 caliber Smith & Wesson revolver was also taken from the right rear pocket of petitioner's jeans. The laboratory report confirmed the material to be crack cocaine and the weight as set out in the plea agreement. Accordingly, it is difficult to understand how the Assistant United States Attorney fabricated this information where the documents cited by petitioner verify the material involved.

In Note D of U.S.S.G., § 2D1.1(c) defines cocaine base as "crack" and "crack" is the street name for a form of cocaine base usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rock-like form. A court can conclude that a substance is crack cocaine without specific evidence that the material involved contained cocaine hydrochloride and sodium bicarbonate. U.S. v. Stewart, 122 F.3d 625, 628 (8th Cir. 1990).

8

The prosecutor cannot have falsified the substance involved as being crack cocaine because petitioner admitted that it was in his plea of guilty and in the analysis of his plea agreement.

b. <u>The superceding indictment</u>.

Petitioner next asserts prosecutorial misconduct in filing a superceding indictment against petitioner. This argument is misplaced because the prosecutor did not file the indictment; the Grand Jury did. Obviously, there was sufficient evidence before the Grand Jury to return the superceding indictment. There is nothing in the record to show that the presentation of this evidence to the Grand Jury was in any way a fabrication or a misdeed by the prosecutor.

Again, petitioner admitted to the quantities involved and it is disingenuous at this late date to accuse a prosecutor of falsifying quantities of crack cocaine when the petitioner admitted that the substance was crack cocaine and admitted the quantities. Again, there is nothing in the record to indicate that the prosecutor conducted himself in any inappropriate way by presenting evidence to a Grand Jury resulting in the filing of a superceding indictment.

2. Ineffective Assistance of Counsel:

a. <u>Failure of counsel to object and move to dismiss the indictment founded on false and misleading information</u>.

As previously stated, the record shows that on August 21, 2003, 24.48 grams of cocaine base were seized from petitioner's vehicle and 27.08 grams were seized from the residence at 1473 Laurel. 25.51 grams of heroin were also seized from the vehicle and 38.97 grams of heroin from the residence. Petitioner's own exhibits as to the police records verify the seizures and the lab report verifies the quantities. With this evidence at hand, it is difficult to fault petitioner's

9

counsel with failure to object to the drugs seized and their quantities. In fact, petitioner even admits possession of the drugs seized. Counsel cannot be faulted for failing to object to the drugs being crack cocaine, or their quantities, when his client admitted possession and the police record support the admission. It would have been fruitless for counsel to request dismissal of the indictment based on petitioner's assertion after the fact that the cocaine seized was not, in fact, cocaine. Burkhalter v. U.S., 203 F.3d 1096, 1098 (8th Cir. 2000). (When a defendant admits in his plea agreement and during the colloquy before the court that he was in possession of crack cocaine at the time he was arrested, it is fruitless for counsel to pursue an investigation that the substance may not have been cocaine.)

Petitioner entered a plea of guilty to Count 1 of the superceding indictment which charged him with possession of at least five grams, but less than 20 grams of cocaine base (crack). In the plea agreement, petitioner admitted that on March 30, 2001 five individually wrapped pieces of cocaine base (crack) were taken from his person constituting 4.76 grams of cocaine base (crack) and that 3.56 grams of cocaine base (crack) were retrieved from the residence at 1435 Goodfellow Blvd., and that on August 21, 2003, quantities of crack coaine and heroin were seized from petitioner's vehicle and from the bedroom where defendant was residing at 1473 Laurel. PT - 26-28. Defendant also admitted in his plea that the controlled substances referred to were distribution amounts of cocaine base (crack), that defendant intended to distribute them to another person or persons and that the "cocaine base (crack) referred to above is 'crack' as defined in §2D1.1(c), Note (D)." Plea Agreement, pages11-14. See also PT - 26-28.

In this subparagraph, petitioner also asserts the failure of his counsel to object to the "clearly erroneous 50 grams or more quantity of 'crack' as set out in Count 4 of the indictment."

10

This issue has been treated as to the claim of prosecutorial misconduct and the discussion there is equally applicable to the claim of ineffective assistance of counsel in this area. There is no evidence of falsification of records or prosecutorial abuse which would cause counsel to challenge the quantity. This is particularly true, as previously stated, when petitioner admitted the quantities in so many ways. Certainly, counsel did not err in failing to object to these quantities as the evidence was so overwhelming to support the quantities.

Giving petitioner the benefit of the doubt, his argument could be construed to mean that he could have been charged in two separate counts with less than 50 grams of crack cocaine being involved in each count. Yet, petitioner was not prejudiced by counsel not making this objection. Had he been charged in two separate counts, he would have faced the same punishment in terms of assessing relevant conduct. Accordingly, his range of punishment would have been no different. This argument is of no benefit to petitioner. See U.S. v. Dixon, 921 F.2d 194, 196 (8th Cir. 1990) (contemporaneous possession of cocaine on one's person and cocaine in a hotel room constituted only one offense and should be charged as only one offense.)

      b.    <u>Failure to counsel to object and move to correct the filing of the superceding indictment.</u>

Petitioner claims here that his counsel was ineffective in failing to raise a Speedy Trial objection after the superceding indictment was filed August 26, 2004. In the original indictment, petitioner was charged with possessing, with intent to distribute, five grams or more of crack cocaine. This charge was amended in the superceding indictment to allege that petitioner possessed, with intent to distribute, 50 grams or more of crack cocaine.

The amendment in the superceding indictment was a different offense. There was a

difference in the quantity of the crack cocaine charged, and a different statutory range of punishment. Petitioner alleges that since the superceding indictment was not filed within 30 days, it violated the Speedy Trial Act, 18 U.S.C. § 3161(b) and should have been dismissed. Yet, § 3162(a)(1) requires dismissal of only those charges contained in the original complaint. Since the superceding indictment contained a new charge, dismissal was not appropriate and counsel was not ineffective in failing to urge this point. See U.S. v. Bailey, 111 F.3d 1229, 1236 (5th Cir. 1997). In addition, much of the running of the time in this case involved petitioner's own motions. His pretrial motions, motions for psychiatric exams, and motions involving conflicts with counsel caused most of the time to run from the date of the filing of the initial indictment to the time of the plea. Petitioner has not shown through his own calculations that the running of the "clock" was in excess of 70 days, not created by his own motion requests.

  c. <u>Failure of counsel to notice or challenge the court's jurisdiction</u>.

Here, again, petitioner raises similar arguments previously addressed. The concerns of quantities and multiple counts have been ruled on. The assertion that there was no evidence to show that the material involved contained sodium-bicarbonate is of no consequence and the failure of counsel to go into these specific chemical compounds was not prejudicial. There is nothing in this assertion to show that this court did not have jurisdiction throughout the entire matter. Counsel was not deficient in this area.

  d. <u>The alleged erroneous advice of counsel concerning the criminal history category resulted in an involuntary waiver.</u>

Petitioner asserts that two criminal history points should not have been added because of a State of Missouri violation. Here, again, petitioner is asserting, after the fact that his counsel

should have objected to the two points at some time during the proceedings. There was nothing to object to. The presentence investigation report showed how the assessment of the criminal history category was made, and the parties at the time of the sentence considered it without apparent objection. Petitioner has cited no basis in his motion to support error in the inclusion of the two points for the Missouri conviction. Petitioner was certainly aware of his criminal history if, in fact, he felt that the state conviction he received, which necessitated the two-level addition in calculating the criminal history category was erroneous. If so, he should have so notified his attorney. In any event, the record shows that the assessment was proper.

In this assignment, petitioner also raises the Booker-Blakeley problem.[1] Apparently, petitioner feels there should have been some evidence adduced under Booker and Blakeley before the two criminal history levels should have been added. The implication of these cases is now firmly established.[2]

As to the waiver of his right to appeal, there is nothing in the record to show that it was not done knowingly and intelligently. At the time of the plea, the Court discussed the provision in the plea agreement wherein both the government and the defendant give up any rights they have

---

[1] U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), Blakeley v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

[2] In this assertion, petitioner specifically urges the Court to find the proceedings unconstitutional and in violation of Booker. In United States v. Moss, 252 F.3d 993 (8th Cir. 2001) the Court of Appeals held that the precursor to Blakeley, Apprendi v. New Jersey, 120 S.Ct. 2348 (2000) was not of watershed magnitude and that the holding of Teague v. Lane, 489 U.S. 288 (1989) barred the retroactive application of an Apprendi claim on collateral review. Similar reasoning prevents Blakeley from being applied retroactively in this case. See Schriro v. Summerlin, 124 S.Ct. 2519, 2522 (2004). (A procedural rule applies only prospectively unless they are "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." Ibid at 2523. See also Whorton v. Bockting, 127 S.Ct. 1173 (2007).

13

to appeal unless the Court would sentence the defendant outside the range of punishment set out by the Advisory Sentencing Guidelines. PT - 13. There is simply nothing in the record to suggest that counsel did not properly represent petitioner in this area.

     e.    <u>Counsel did not properly advise petitioner during the plea</u>.

Once again, petitioner complains that his counsel did not properly advise him as to how to react to the quantity disputes. This has been treated adequately earlier in this opinion and no further elaboration is needed.

In fact, at the time of the plea, petitioner stated to the Court that he understood the methodology whereby the range of punishment was calculated pursuant to the Advisory Sentencing Guidelines. PT - 12. Petitioner had no questions as to what his plea agreement with the government was. PT - 14. Petitioner told the Court that he was satisfied with his lawyer. PT - 21. Petitioner also told the Court at the end of the plea dialogue that he understood everything that the Court discussed with him. PT - 32.

The Court finds no basis for the petitioner's argument and determines that there is no showing that petitioner's counsel was deficient in not properly advising him during the plea itself.

     f.    <u>Failure of Counsel to object or move to correct the breach of the stipulation of facts pursuant to the plea agreement</u>.

Again, the examination of the colloquy that occurred during the plea agreement does not support petitioner's position.

Petitioner indicated that he did not read well and stated that his counsel read the plea agreement to him. The Court was concerned that there was a factual basis for the plea, and requested that counsel for the government read the stipulation of facts in the plea agreement to

14

the Court and petitioner. Counsel read from the Statement of Facts in the plea agreement, and during the middle of the recitation the Court asked petitioner if he had any controversy with what counsel had read as being correct and petitioner replied "Not to my knowledge, no." PT - 26.

Counsel then read the remainder of the stipulation of facts. At one point the petitioner stated that a "whole lot of it" that had been read was not accurate. Petitioner's concern had to do with the events of August 21, 2003. Accordingly, the Court inquired of counsel for the government if the government would be able to introduce evidence to support the events of August 21, 2003, and counsel indicated that he would be able to do so . PT - 29-30.

Accordingly, the Court determined that there was an appropriate factual basis for the plea on petitioner's admission as to many of these facts being accurate and the government's statement that the contested facts would have evidence to support the government's position.

Since petitioner agreed that the majority of the facts set out in the statement were accurate and as counsel for the government indicated to the Court that there would be proof to support the facts in dispute, the Court finds that counsel for the defendant was not ineffective in this area.

## Summary

After careful review of petitioner's claim and the record in this case, the Court finds that petitioner's counsel did not make errors so serious that he was not functioning as the counsel guaranteed petitioner by the Sixth Amendment. The Court finds there is insufficient evidence to show that but for counsel's purported errors, petitioner would not have pleaded guilty and would have insisted on going to trial. Accordingly, petitioner's motion should be denied.

Dated this __14th__ day of March, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE